USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/30/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VALENCIA BOONE,

Plaintiff,

-against-

RIVERBAY CORP.,

Defendant.

24-CV-01263 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Plaintiff Valencia Boone was a Peace Officer working for Defendant Riverbay Corporation ("Riverbay"), in a Bronx community commonly known as "Co-Op City."[1] Plaintiff filed this lawsuit alleging improper termination of her employment due to disabilities arising from her injuries in an off-duty motor vehicle accident. The Complaint alleges disability discrimination, failure to accommodate, and retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107 *et seq*. Dkt. No. 1 ("Complaint" or "Compl."). Riverbay moves for summary judgment on all claims. Dkt. No. 50. For the reasons set forth below, Riverbay's motion for summary judgment is DENIED.

[1] The Court acknowledges that Ms. Boone is currently re-employed with Riverbay Corp. but for clarity takes the facts as they were at the time of the alleged discriminatory action.

## BACKGROUND

## I. RELEVANT FACTS[2]

Riverbay is a residential cooperative containing more than 15,000 apartments and 50,000 residents in the Bronx, commonly known as Co-Op City. J56.1 ¶¶ 1–2. Plaintiff began working as a Peace Officer for the Riverbay Public Safety Department in 2009. *Id.* ¶ 7. The essential duties of her job included: (1) patrolling assigned areas and monitoring activities; (2) investigating incidents and apprehending suspects; (3) preparing and maintaining reports and records; (4) gathering evidence; (5) responding to emergency situations, events, and incidents; and (6) coordinating with first responders and emergency services. *Id.* ¶ 17; Dkt. No. 52-9. The job description included specific physical requirements: "exert[ing] up to 120 pounds of force to lift, carry, push, pull, or otherwise move objects"; "regular walking or standing for extended periods of time"; "stooping or bending"; and "[h]andling and working with various materials and objects." J56.1 ¶ 18; Dkt. No. 52-9. Peace Officers were also required to "pass [a] physical agility test and maintain physical and agility requirements." J56.1 ¶ 18; Dkt. No. 52-9.

### A. Plaintiff's Medical Leave and First Accommodation Request

Plaintiff was injured in an off-duty car accident on January 24, 2023. *Id.* ¶ 31. As a result of the accident, she sustained injuries to her left shoulder and lower back and underwent shoulder surgery on March 31, 2023. *Id.* On February 1, 2023, Riverbay issued a letter to Plaintiff stating that her position would be held open for up to six months of leave and provided

[2] The following facts are taken from the parties' Joint Rule 56.1 Statement ("J56.1"), *see* Dkt. No. 54; Plaintiff's Response to Defendant's Rule 56.1 Statement ("Pl.'s Rep. 56.1"), *see* Dkt. No. 58; Defendant's Response to Plaintiff's Rule 56.1 Counter-Statement ("Def.'s Rep. 56.1"), *see* Dkt. No. 64; and the parties' declarations and exhibits. The facts are either undisputed or described in the light most favorable to Plaintiff.

her with the necessary documents for submission. J56.1 ¶ 35; Dkt. No. 52-10. Plaintiff submitted the required documents. J56.1 ¶ 34.

Near the end of the six-month leave, on June 30, 2023, Riverbay sent Plaintiff a letter regarding her return to work. *Id.* ¶ 37. The letter informed Plaintiff that her leave would expire on July 20, 2023, and that "if [she] d[id] not return to work [she] is subject to termination unless [she is] granted additional leave time as a reasonable accommodation under the Americans with Disabilities Act or similar law." Dkt. No. 52-11 at 3; J56.1 ¶ 38; Dkt. No. 52-3 at 115:15–18. Riverbay's letter explicitly stated that it was sent "in furtherance of Riverbay's commitment to engage in a cooperative dialogue with [Plaintiff] about reasonable accommodations" and repeatedly requested Plaintiff's prompt response (within ten days).[3] Dkt. No. 52-11 at 3. The letter further provided:

> If you would like to discuss a reasonable accommodation, please:
> 1) contact the undersigned at [phone number] as soon as possible but no later than **ten (10) calendar days** from the date of this letter; and
> 2) complete and return promptly the enclosed Reasonable Accommodations Request Form. Depending on the nature of your request, we may ask that you submit a note from your medical provider specifying what accommodations you need and/or when you will be able to return to work.
>
> If we do not hear from you at all within **ten (10) calendar days** from the date of this letter, we will unfortunately be left with no option but to terminate your employment once your leave has exceeded 6 months.

*Id.* On July 11, 2023, before her leave had expired, Plaintiff's orthopedic surgeon, Dr. Steven Struhl, issued a medical note (the "Struhl Note") indicating that she was "totally disabled from working in any capacity and would be unable to return to work as a result of her injuries until at

[3] Defendant does not allege that Plaintiff's delay in responding was a basis for her termination.

least October 2023." J56.1 ¶ 40; Dkt. No. 52-3 at 100:14–23, 101:12–102:7; Dkt. No. 52-4 at 90:14–91:12; Dkt. No. 52-12.

On July 20, 2023 (the day her leave expired), Plaintiff sent Riverbay a Confidential Health Questionnaire (the "Goldenberg Questionnaire") completed by Dr. Joyce Goldenberg, her physical therapist, along with the Struhl Note. J56.1 ¶ 44. Both indicated that Plaintiff was totally disabled from working in any capacity until at least October 2023.[4] Dkt. Nos. 52-12, 52-13. Plaintiff confirmed in her deposition that at that time she would have been unable to perform the essential duties of her position: "[I]n my line of duty, I have to sometimes take somebody down, I have to fight, sometimes I have to break up fights with kids. And if my shoulder -- I'm out on school post and they're fighting and I have to go out and separate or have to arrest somebody and have to fight with them, my shoulder would have been a problem at that time. It was still a little tender. So I needed a little more time to heal and I wasn't -- yeah." J56.1 ¶ 42; Dkt. No. 52-3 at 164:10–21.

**B. Accommodation Committee Review and Plaintiff's Termination**

After Plaintiff provided the Goldenberg Questionnaire and Struhl Note to Riverbay on July 20, 2023, Riverbay did not request any additional information. J56.1 ¶ 45; Dkt. No. 52-4 at 83:23–84:8; Dkt. No. 52-5 at 132:13–16. Sometime between July 20, 2023, and August 2, 2023, the Riverbay Accommodations Committee (the "Committee") convened a meeting regarding Plaintiff's accommodation request and reviewed the Struhl Note and Goldenberg Questionnaire. Dkt. No. 52-4 at 84:24–85:6; Dkt. No. 52-5 at 124:9–20. The Committee's role was to review accommodation requests and determine whether leave, additional extended leave, "light duty," or

[4] The Struhl Note indicated a "tentative" return to work date of October 4, 2023, while the Goldenberg Questionnaire indicated that Plaintiff would likely be unable to work until December 24, 2023. Dkt. Nos. 52-12, 52-13.

other changes are appropriate accommodations for Riverbay employees. J56.1 ¶¶ 57–58. The Committee denied Plaintiff's accommodation request, and she was provided with a notice of termination on August 2, 2023. J56.1 ¶ 49; Dkt. No. 52-3 at 98:9–11, 122:15–18; Dkt. No. 52-4 at 92:13–15; Dkt. No. 52-14.

Plaintiff did not have any substantive conversations regarding her disability or requests for accommodation until after the notice of termination, when she requested an informal meeting with Human Resources. J56.1 ¶¶ 50–51. That meeting took place on August 3, 2023 but did not result in Plaintiff's reinstatement or extension of her leave. J56.1 ¶ 52.

Plaintiff continued treatment for her injuries through sometime in 2024. J56.1 ¶¶ 39, 41, 56. Plaintiff was re-hired at Riverbay and returned to work on April 10, 2025. J56.1 ¶ 59.

## II. PROCEDURAL HISTORY

Plaintiff filed this action on February 20, 2024. *See* Dkt. No. 1. Fact discovery concluded on June 24, 2025. *See* Dkt. Nos. 41, 42. On October 2, 2025, Defendant moved for summary judgment on all claims. *See* Dkt. Nos. 50, 51; Dkt. No. 56 ("Br."). The motion is now fully briefed and before the Court for decision. *See* Dkt. No. 57 ("Opp. Br."), Dkt. No. 62 ("Rep. Br.").

# DISCUSSION

## I. LEGAL STANDARD ON SUMMARY JUDGMENT

"Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate 'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Williams v. N.Y.C. Dep't of Health & Mental Hygiene*, 299 F. Supp. 3d 418,

424 (S.D.N.Y. 2018) (quoting Fed. R. Civ. P. 56(a)).[5] A fact is material if it could "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material facts exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party moving for summary judgment bears "the initial burden of demonstrating the absence of a genuine dispute of material fact." *See Brown v. Metro. Dental Assocs.*, No. 21-CV-0851 (CM), 2023 WL 5154415, at *4 (S.D.N.Y. Aug. 10, 2023) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The non-moving party cannot rely upon "conclusory allegations or unsubstantiated speculation" to defeat a motion for summary judgment. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). Rather, it "must offer some hard evidence showing that its version of the events is not wholly fanciful." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)). In deciding a motion for summary judgment, the Court must "construe the evidence in the light most favorable to the Plaintiff[], drawing all reasonable inferences and resolving all ambiguities in [its] favor." *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 118 (2d Cir. 2013) (quoting *Gould v. Winstar Commc'ns, Inc.*, 692 F.3d 148, 151 (2d Cir. 2012)).

## II. DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S DISABILITY DISCRIMINATION CLAIMS

Plaintiff brings disability discrimination claims under the ADA, NYSHRL, and NYCHRL for failure to provide reasonable accommodation and for adverse employment action.

[5] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

The ADA prohibits discrimination "on the basis of disability in regard to . . . [the] discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. "Disability discrimination claims under the ADA 'may be brought under a theory of adverse employment action or of failure to provide reasonable accommodation.'" *Gilani v. Deloitte LLP*, No. 23-CV-04755 (JMF), 2024 WL 4042256, at *5 (S.D.N.Y. Sept. 4, 2024) (quoting *Samuels v. City of New York*, No. 22-CV-01904 (JGK), 2023 WL 5717892, at *6 (S.D.N.Y. Sept. 5, 2023)). Discrimination claims under the ADA are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009). Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima-facie case of discrimination under the ADA. *See id.* "Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its actions." *Garcia v. Kings Cnty. Hosp. Ctr.*, No. 16-CV-03151 (ER), 2018 WL 389212, at *4 (S.D.N.Y. Jan. 11, 2018) (citing *McDonnell*, 411 U.S. at 802). The burden ultimately shifts back to the plaintiff to demonstrate that the reason proffered by the defendant is a pretext for discrimination. *Id.*

The NYSHRL similarly prohibits employers from discharging or discriminating against individuals "in terms, conditions, or privileges of employment" because of an individual's disability. N.Y. Exec. L. § 296(a). "A claim of disability discrimination under the NYSHRL . . . is governed by the same legal standards as govern federal ADA claims." *Tafolla v. Heilig*, 80 F.4th 111, 119 (2d Cir. 2023) (quoting *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006)). Accordingly, the Court analyzes Plaintiff's ADA and NYSHRL discrimination claims together.

The NYCHRL prohibits an employer from discriminating against persons "in compensation or in terms, conditions or privileges of employment" because of their disability. N.Y.C. Admin. Code § 8-107(1)(a)(3). Claims under the NYCHRL are analyzed "'separately and independently from any federal and state law claims' because the NYCHRL sets a lower bar for actionable claims." *Parker v. Isr. Disc. Bank of New York, Inc.*, No. 24-688-CV, 2025 WL 1779219, at *3 (2d Cir. June 27, 2025) (citing *Mihalik v. Credit Agricole Cheuvreux N.A., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013)).

**A. Failure to Accommodate Claims**

**1. ADA and NYSHRL**

"It is well established that 'discrimination' under the ADA includes a failure to provide an employee with a reasonable accommodation for his or her disability." *Williams v. N.Y.C. Dep't of Health & Mental Hygiene*, 299 F. Supp. 3d 418, 425 (S.D.N.Y. 2018) (citing *Graves*, 457 F.3d at 183–84). To establish a prima facie case of discrimination for failure to accommodate under the ADA and NYSHRL, "a plaintiff must show by a preponderance of the evidence that: (1) [her] employer is subject to the ADA; (2) [s]he was disabled within the meaning of the ADA; (3) [s]he was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) . . . [her] employer refused to make a reasonable accommodation." *Tudor v. Whitehall Cent. Sch. Dist.*, 132 F.4th 242, 246 (2d Cir. 2025) (quoting *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020)). Ultimately, "the plaintiff 'bears the burdens of both production and persuasion as to the existence of some accommodation that would allow [her] to perform the essential functions of [her] employment.'" *McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013) (quoting *McBride*, 583 F.3d at 97). Prongs one and two are not at issue on this motion. *See* Dkt. 56 at 4 ("For purposes of this motion,

Riverbay does not dispute that Plaintiff met the first two (2) prongs of her [disability discrimination] case.").

To determine the essential function of a job, courts in this Circuit "conduct[] a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice," in which they "draw[ ] all inferences in favor of the non-moving party." *Tafolla*, 80 F.4th at 119 (quoting *McMillan*, 711 F.3d at 126). Factors relevant to whether an aspect of a job is an essential function "include the employer's judgment, written job descriptions, the amount of time spent on the job performing the function, the mention of the function in a collective bargaining agreement, the work experience of past employees in the position, and the work experience of current employees in similar positions." *McMillan*, 711 F.3d at 126 (citing *Stone v. City of Mount Vernon*, 118 F.3d 92, 97 (2d Cir. 1997)). In assessing whether a job function is essential, "a court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position." *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003) (quoting *D'Amico*, 132 F.3d at 151).

The undisputed evidence in this case establishes, at least for the purposes of this motion, that at the time she was terminated Plaintiff could not have performed all of the essential functions of her job without accommodation. Plaintiff emphasizes her over a decade-long employment as a Peace Officer as irrefutable evidence that she was qualified to perform the role of Peace Officer at the time of termination. Opp. Br. at 1, 6, 8. But this does not end the inquiry. The role of Peace Officer at Riverbay requires "apprehending suspects," "responding to emergency situations, events, and incidents," "exert[ing] up to 120 pounds of force to lift, carry, push, pull, or otherwise move objects," "regular walking or standing for extended periods of time," and that officers maintain physical and agility requirements. J56.1 ¶ 18; Dkt. No. 52-9.

The employer's judgment, Plaintiff's own deposition, and the record evidence all establish that these physical requirements were essential functions of Plaintiff's job as a Peace Officer at Riverbay. *See McMillan*, 711 F.3d at 126; Dkt. No. 52-3 at 68:4–19; J56.1 ¶¶ 18–19; Dkt. No. 52-9.

In contrast, Plaintiff's medical questionnaire and medical note stated at the time of termination, Plaintiff was "100% disabled from working in any capacity," Dkt. No. 52-12, and could not engage in "lifting/carrying/pushing/pulling > 8 lbs" nor "walking/standing > 10 min.," Dkt. No. 52-13. Plaintiff herself testified that her injuries, at that time, would have made it impossible for her to effectively deal with common situations on the job, like breaking up a fight among adolescent boys. J56.1 ¶ 42; Dkt. No. 52-3 at 164:10–21. It cannot be seriously disputed that Plaintiff was unable to perform at least some of the essential functions of her job at the moment of termination, without an accommodation. However, a temporary inability to perform all of the essential functions of a job for a "discrete and reasonably short period" due to illness or injury "does not as a matter of law entail that she was unable to perform the essential functions of her job 'with or without reasonable accommodation.'" *Konipol v. Rest. Assocs.*, No. 01-CV-07857 (GEL), 2002 WL 31618825 at *7 (S.D.N.Y. Nov. 20, 2002) (quoting 42 U.S.C. § 12111(8)). "Where the relevant accommodation is medical leave, the proper inquiry [on ability to perform essential functions] is whether leave 'will be reasonably likely to enable the employee to return to work' after the conclusion of their leave." *Jackson v. Fin. Health Network*, No. 25-CV-10017 (JPO), 2026 WL 2620564, at *5 (S.D.N.Y. Sept. 4, 2026); *see also Graves*, 457 F.3d at 186 n.6 (2d Cir. 2006).

Accordingly, there is at least a relevant factual dispute (if not conclusive evidence in favor of Plaintiff, given her present employment in her prior job) regarding whether she could

perform all of the essential functions of her job, with or without accommodation, following the requested leave. This precludes summary judgment for Defendants. There is also a genuine dispute of material fact as to whether additional leave was a reasonable accommodation under the circumstances. Both the Struhl Note and Goldenberg Questionnaire submitted by Plaintiff in her request for additional leave contained the sentiment that Plaintiff would be returning to work after some limited additional time for recovery. Defendant correctly identifies that the inconsistency between the letters raised questions as to when her exact return date would be, but this does not amount to an "indefinite" leave of absence that could be unreasonable as a matter of law. *See Graves v. Finch Pruyn & Co.*, 353 F. App'x 558, 560 (2d Cir. 2009); *cf. Hernandez v. City of New York*, No. 11-CV-06644 (KPF) (DF), 2015 WL 321830, at *21 (S.D.N.Y. Jan. 23, 2015) (Leave not a reasonable accommodation where "[e]ven according Plaintiff the benefit of every reasonable inference, none of th[e] correspondence provided any assurance to Defendant that Plaintiff would have been able to return to work at the end of the requested leave, and indeed the correspondence appears to demonstrate that Plaintiff and her doctors were contemplating lengthy or ongoing treatment."); *Kruly v. Akoustis Techs., Inc.*, No. 21-CV-06181 (FPG), 2023 WL 3995467, at *6 (W.D.N.Y. June 14, 2023) (Denying summary judgment where plaintiff's notice of estimated return date extending leave by three months may be a reasonable accommodation).

Turning to whether "light duty" was a reasonable accommodation, factual disputes on this issue also preclude summary judgment. Of course, Defendant was not required to place Plaintiff in a new role in a different department because "[n]othing in the ADA requires an employer to abandon its legitimate, nondiscriminatory company policies defining job qualifications, prerequisites, and entitlements to intra-company transfers." *Felix v. N.Y.C.*

*Transit Auth.*, 154 F. Supp. 2d 640, 655 (S.D.N.Y. 2001) (quoting *Dalton v. Subaru-Isuzu Auto., Inc.*, 141 F.3d 667, 678 (7th Cir. 1998)), *aff'd*, 324 F.3d 102 (2d Cir. 2003). Additionally, "employers are not required to create new jobs or reassign disabled employees if no positions are vacant." *Id.* But in this case, there is a factual dispute as to whether a job was available for Plaintiff in light duty. Plaintiff has asserted that light duty positions were available for other similarly situated Peace Officers. Pl.'s Rep. 56.1 ¶¶ 90, 92, 96–97, 99–100, 103, 157, 160, 162; Dkt. No. 59-2 ¶¶ 18–26. Defendant vehemently contests this position. Def.'s Rep. 56.1 ¶¶ 126, 132, 157–58, 160, 162. But on the existing record, it is possible that a reasonable jury could find that a "light duty" position, indisputably performed by other Peace Officers within the Department of Public Safety, was an available accommodation that would have enable Plaintiff to return to work as a Peace Officer.

Nor is summary judgment warranted on the last step of the inquiry: whether Defendant has shown that the accommodations would have imposed an undue burden on Riverbay. The parties' arguments on the burden of holding Plaintiff's position open for several months while she was on extended leave rely on conclusory allegations or unsubstantiated speculation. *Compare* Opp. Br. at 20 ("[A]s a corporation with hundreds, if not thousands of employees, it is, at the very least, a question of fact whether the composition, structure, or functions of Riverbay's workforce would have been severely impacted by granting Ms. Boone her requested accommodation."), *with* Rep. Br. at 8 ("Each officer is critical to maintaining order and safety. Removing an officer imposes a significant burden on the Public Safety Department."). Taking the facts in the light most favorable to Plaintiff, a genuine dispute of material fact exists as to whether Defendant engaged in any process to consider whether granting additional leave was reasonable or unduly burdensome, or simply summarily denied her requests at the committee

meeting. *See, e.g.*, Goonan v. Fed. Rsrv. Bank of New York, No. 12-CV-03859 (JPO), 2014 WL 3610990, at *5 (S.D.N.Y. July 22, 2014) (Once an employee requests accommodation for a disability, the employer must engage in an "informal and flexible 'interactive process' meant to determine whether and how an employer can reasonably accommodate its employee."); *Dudnauth v. A.B.C. Carpet & Home Inc.*, No. 23-CV-01858 (ER), 2025 WL 2145839, at *8 (S.D.N.Y. July 29, 2025) ("The New York Court of Appeals has stated that, under the NYSHRL, failure to engage in the interactive process is generally sufficient to foreclose summary judgment in favor of the employer." (quoting *Jacobsen v. New York City Health and Hospitals Corp.*, 11 N.E.3d 159, 169 (N.Y. 2014))).

The Court finds flummoxing the lack of evidence on the record regarding the Committee hearing—a mere nine lines in the Joint Rule 56.1 statement accompanied by no minutes, no summary of findings, nor any substantive internal communications. *See* J56.1 ¶¶ 45–48. What little factual record exists on the Committee's process is in dispute in the parties' Rule 56.1 contentions. Def.'s Rep. 56.1 ¶¶ 78, 131–35, 138; Pl.'s Rep. 56.1 ¶¶ 70, 78–79, 83. As other district courts in this circuit have identified, the business situation facing the employer is relevant in determining whether a short additional leave is reasonable or presents an undue burden. *See, e.g.*, *Graves v. Finch Pruyn & Co.*, No. 03-CV-00266 (GLS) (RFT), 2009 WL 819380, at *7 (N.D.N.Y. Mar. 27, 2009) ("[T]he analysis might differ if the employer was a sizeable company with a large, interchangeable work force. . . . [A] request for an unpaid, two week leave of absence might be entirely reasonable if the employer could simultaneously accommodate a valued disabled employee and easily fill the vacuum caused by the employee's absence."), *aff'd*, 353 F. App'x 558 (2d Cir. 2009).

Defendant has similarly failed to demonstrate as a matter of law that temporarily assigning Plaintiff to one of the types of "light duty" assignments provided to pregnant Peace Officers or those injured in the line of duty would have been unreasonable or imposed an undue burden. Although Defendant points to the Collective Bargaining Agreement as the reason why it must offer such positions to pregnant or line-of-duty-injured officers, it nowhere demonstrates that it is *prohibited* by that Agreement from offering similar accommodations under other circumstances, nor that doing so would be unreasonable or impose an undue burden.[6] Accordingly, a jury could find for Plaintiff on this issue as well.

**2. NYCHRL**

Under the NYCHRL, "a plaintiff who cannot perform the essential functions of [her] job with a reasonable accommodation cannot succeed on a failure-to-accommodate claim." *Abdelsayed v. N.Y. Univ.*, No. 23-1144, 2024 WL 2828414, at *1 (2d Cir. June 4, 2024) (citing *Jacobsen v. N.Y.C. Health & Hosps. Corp.*, 22 N.Y.3d 824, 834–35 (2014)). Unlike the ADA and NYSHRL, for claims brought under the NYCHRL, the "employer, not the employee, has the pleading obligation to prove that the employee could not, with reasonable accommodation, satisfy the essential requisites of the job." *Brown v. N.Y.C. Dep't of Educ.*, 806 F. App'x 45, 49 (2d Cir. 2020) (quoting *Romanello v. Intesa Sanpaolo, S.p.A.*, 22 N.Y.3d 881, 885, 998 (2013)). For the reasons stated above—that a genuine dispute of material fact exists as to whether the requested limited additional leave or light duty would constitute a reasonable accommodation

[6] For example, based on the current record it is unclear whether the evidence that a pregnant Peace Officer, Steffanie Pratt, being granted an accommodation for light duty weighs in favor of or against a finding that light work was an available accommodation for Plaintiff. Br. at 20; Opp. Br. at 22; Rep. Br. at 8–9; Dkt. Nos. 52-18, 63-1.

enabling Plaintiff to satisfy the essential duties of her job—Defendant has failed to plead facts rebutting a NYRCHL failure-to-accommodate claim as a matter of law.

### B. Adverse Employment Action Claims

#### 1. ADA and NYSHRL

Plaintiff also brings claims of discrimination under the ADA and NYSHRL based on an adverse employment action. To establish a *prima facie* case of discrimination under the ADA and NYSHRL based on an adverse employment action, a plaintiff must demonstrate:

> (a) their employer is subject to the ADA; (b) they are disabled within the meaning of the ADA or perceived to be so by the employer; (c) they were otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (d) they suffered an adverse employment action because of their disability.

*Vitti v. Macy's Inc.*, 758 F. App'x 153, 156 (2d Cir. 2018). For the same reasons discussed above, there exists a genuine dispute of material fact as to whether the asserted "reasonable accommodation" of additional leave or light work would have enabled Plaintiff to be qualified to perform the essential functions of a Peace Officer, and whether either accommodation was reasonable or would have imposed an undue burden on Riverbay. Accordingly, the Court DENIES summary judgment on Plaintiff's adverse employment action claim under the ADA and NYSHRL.

#### 2. NYCHRL

Similarly, Plaintiff's disability discrimination claim based on adverse employment action survives summary judgment under the more liberal standard of the NYCHRL.

## III. DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S RETALIATION CLAIMS

**A. ADA**

Retaliation claims brought under the ADA are also subject to the *McDonnell Douglas* burden-shifting framework. *Jones-Cruz v. Brookdale Hosp. Med. Ctr.*, No. 19-CV-06910 (MMG), 2025 WL 1617193, at *11 (S.D.N.Y. June 6, 2025). Thus, if Plaintiff establishes a *prima facie* case of retaliation, "the burden shifts to Defendant to show a legitimate, non-retaliatory rationale. If Defendant can provide such proof of a non-retaliatory motivation, then in order to avoid summary judgment, Plaintiff must show that the proffered non-retaliatory reason is pretextual." *Id.*

To establish a *prima facie* case for retaliation under the ADA, Plaintiff must prove: "(1) she engaged in protected activity; (2) the defendant was aware of this activity; (3) the defendant took an adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Id.* (citing *Getso v. City Univ. of New York*, No. 08-CV-07469 (LAP), 2009 WL 4042848, at *5 (S.D.N.Y. Nov. 18, 2009)).

The first two elements of the *prima facie* case are undisputed. Plaintiff also satisfies prong three. Although the denial of a reasonable accommodation does not amount to an adverse employment action, *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 457 (S.D.N.Y. 2023), Plaintiff's termination is "the prototypical adverse employment action." *Scott v. YSB Servs. Inc.*, No. 21-CV-07711 (VSB), 2024 WL 1330043, at *5 (S.D.N.Y. Mar. 28, 2024). Plaintiff also meets the fourth prong required to establish a *prima facie* case of retaliation because of the temporal proximity between her engagement in protected activities and her termination. Plaintiff submitted her requests for accommodation on July 20, 2023. J56.1 ¶ 44. She was terminated two weeks later on August 2, 2023. J56.1 ¶ 49. The temporal proximity between Plaintiff's engagement in protected activities and her termination sufficiently establish a causal connection between the alleged adverse action and the protected activity at this initial

stage of the inquiry. *See, e.g.*, *Bonura v. Chiarlitti*, No. 08-CV-10190 (CS), 2010 WL 11712789, at *11 (S.D.N.Y. Mar. 31, 2010) ("[T]wo weeks is certainly sufficient temporal proximity to infer causation.").

At the second step in the *McDonnell Douglas* framework, Defendant has not met its burden in demonstrating, as a matter of law, a legitimate, non-retaliatory rationale for Plaintiff's termination. This issue again depends on whether Plaintiff's requested or possible accommodations were reasonable. *See* Br. at 25. As discussed at length above, that is a heavily disputed factual issue in this case, that cannot be resolved as a matter of law on the present record and precludes summary judgment for Defendant on Plaintiff's ADA retaliation claim.[7]

**B. NYSHRL and NYCHRL**

Defendants' motion for summary judgment on Plaintiff's NYSHRL and NYCHRL retaliation claims fails for substantially the same reasons. To establish a *prima facie* case of retaliation under the NYSHRL and NYCHRL, a plaintiff must prove "identical" elements to

[7] The disputes over Ms. Morris' role in the review of Plaintiff's accommodation request and her explanation of the reason for Plaintiff's termination aptly illustrates another dispute on Plaintiff's retaliation claim. Defendant asserts that Ms. Morris does not make any determinations regarding accommodation requests. Dkt. No. 55 ¶¶ 68–69. Plaintiff asserts that Ms. Morris participated in the committee and provided information about accommodation requests. Pl.'s Rep. 56.1 ¶¶ 67–68. Plaintiff further argues that she believed her termination was motivated by her disability based on "Ms. Morris pointing to the doctors' notes and saying the papers indicated Plaintiff was disabled," *id.* ¶ 81, and that "Ms. Morris informed Plaintiff that her request was denied because Defendant believed she was not disabled and should not be accommodated," *id.* ¶ 83. Plaintiff further asserts that she "spoke with Ms. Morris regarding light duty at Riverbay." *Id.* ¶ 96. Plaintiff claims "Ms. Morris told Plaintiff that she was being terminated for being a liar, and that Plaintiff's doctors were also liars," *id.* ¶ 145, "Ms. Morris also expressed doubt about Plaintiff's leave, expressing that she should not have been out of work for the amount of time that she was," *id.* ¶ 146, and that "Ms. Morris informed Plaintiff that she was being terminated until new paperwork was provided, and whatever new information was received would need to be evaluated by the Committee, reiterating that it would be investigated," *id.* ¶ 149. Plaintiff supports most of these assertions with sworn testimony on the record, *e.g.*, "[Ms. Morris] didn't want no kind of discussion. She said I was a liar and I shouldn't have been out three months, much less six and my doctors were liars. So she didn't want to hear, could I return or how would I return. She didn't want to hear nothing, anything." Dkt. No. 52-3 at 166:5–12.

those required by the ADA "except that the plaintiff need not prove any 'adverse' employment action; instead, [she] must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity." *Wright v. City of New York*, No. 23-CV-03149 (KPF), 2024 WL 3952722, at *10 (S.D.N.Y. Aug. 27, 2024). Because Plaintiff has established a *prima facie* case under the ADA, she has satisfied her initial burden of establishing a *prima facie* case under the more lenient standards of the NYSHRL and NYCHRL. For the same reasons stated above with regard to Plaintiff's ADA retaliation claim, Plaintiff's retaliation claims under the NYSHRL and NYCHRL cannot be resolved at summary judgment.

**CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is DENIED. The Clerk of Court is respectfully directed to terminate Dkt. Nos. 50 and 51.

Dated: September 30, 2026
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge